21 P.3d 491

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael James BOWER, Defendant–Appellant.**

No. 25642.

Court of Appeals of Idaho.

Feb. 28, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Sara B. Thomas, Deputy Appellate Public Defender, Boise, for appellant. Sara B. Thomas argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

LANSING, Judge.

When paramedics responded to a report that a man had passed out in the shower of a motel room, they found Michael James Bower lying unconscious in the shower, and also observed drugs and drug paraphernalia in the room. They notified police, who came to the room and seized the evidence. After Bower was charged with possession of a controlled substance and possession of drug paraphernalia, he moved for suppression of the evidence found in his motel room. The motion was denied, and Bower pleaded guilty, reserving the right to appeal the denial of his suppression motion.

## I.

## BACKGROUND

Bower had been residing in a motel room with his four-year-old daughter. One morning, the motel manager found Bower's daughter crying in the parking lot. After she indicated there was something wrong with her father, the manager found Bower lying unconscious in the shower of his motel room. The manager then called for paramedics. When county paramedics and firemen responded, they found Bower unconscious and barely breathing, with the little girl sitting on the bed. While Bower was being attended by paramedics, one of the firemen, a former police officer, noticed what appeared to be drugs and drug paraphernalia in an open drawer. He notified his captain, who instructed him to call for police assistance. Officers who arrived shortly thereafter were informed that the paramedics had been treating an unconscious man and that drug paraphernalia were visible in the room. By that time, Bower had regained consciousness and was refusing further treatment, but when officers crossed the threshold he was still lying on the floor, with paramedics tending to him. The officers entered the room and seized the paraphernalia, which included several syringes and a spoon with burn marks and residue indicative of narcotic cooking. Bower was questioned and admitted to the officers that he had just overdosed on heroin.

Bower was charged with possession of drug paraphernalia, Idaho Code § 37–2734A, injury to a child, I.C. § 18–1501(2) and two counts of possession of a controlled substance, I.C. § 37–2732(c). Bower filed a motion to suppress the evidence found in his motel room on the ground that the entry by police was unlawful. The district court determined that exigent circumstances justified the police intrusion, and therefore denied the motion. Bower entered a conditional guilty plea to one count of possession of a controlled substance and to possession of drug paraphernalia, reserving his right to appeal the denial of his suppression motion. The remaining charges were dismissed.

On appeal, Bower argues that the police officers' warrantless entry into his motel room violated the Fourth Amendment to the United States Constitution, and therefore the evidence they seized must be suppressed.

## II.

## ANALYSIS

Whether a search complies with the Fourth Amendment is a question of law over which this Court exercises free review.

*State v. Hawkins,* 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). The Fourth Amendment's guarantee against unreasonable searches and seizures protects against the warrantless entry of a home by government agents. *See Welsh v. Wisconsin,* 466 U.S. 740, 748, 104 S.Ct. 2091, 2096, 80 L.Ed.2d ·732, 741 (1984); *State v. Curl,* 125 Idaho 224, 225, 869 P.2d 224, 225 (1993). This constitutional protection extends to a temporary home, such as a motel room. *State v. Hall,* 132 Idaho 751, 753, 979 P.2d 624, 626 (1999). When a warrantless search or seizure has occurred, the State bears a heavy burden to justify dispensing with the warrant requirement. *Welsh* at 749–50, 104 S.Ct. at 2097–98, 80 L.Ed.2d at 742–43; *Curl, supra; State v. Sailas,* 129 Idaho 432, 434, 925 P.2d 1131, 1133 (Ct.App.1996). Recognized justifications include an exigent circumstance in which there is "a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498 (1978); *Sailas, supra.* Exigencies which justify a warrantless entry include "the risk of danger to the police or to other persons inside or outside the dwelling." *Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85, 95 (1990); *Sailas,* 129 Idaho at 435, 925 P.2d at 1134. This encompasses situations where government agents "reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978). However, a warrantless search must be "strictly circumscribed by the exigencies which justified its initiation." *Id.,* 437 U.S. at 393, 98 S.Ct. at 2413, 57 L.Ed.2d at 300 (quoting *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908 (1968)).

■ If police are lawfully within a home, and see contraband or other evidence of a crime in plain view, they may seize the evidence without a warrant. *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2305, 110 L.Ed.2d 112, 120 (1990); *State v. Claiborne,* 120 Idaho 581, 586, 818 P.2d 285, 290 (1991); *State v. Hagedorn,* 129 Idaho 155, 158, 922 P.2d 1081, 1084 (Ct.App.1996). This plain view doctrine applies if the officer is lawfully in a position to view the evidence and it is immediately apparent to the officer that the items observed are subject to seizure. *Id.* at 159, 922 P.2d at 1085.

Here, Bower does not question that his medical emergency was an exigent circumstance that justified the entry into his room by paramedics and firemen, nor does he dispute that the drugs and paraphernalia were in the plain view of persons legally in the room. However, Bower argues that the exigency had passed by the time police officers arrived because he was by that time awake and declining treatment and because the officers were not there to handle the medical emergency but, rather, to conduct a criminal investigation.

The State responds that the police may accompany or follow emergency medical personnel who lawfully enter a residence in exigent circumstances. This is true, the State asserts, regardless of whether the police are responding to the emergency because the presence of police where other state officers are present does not increase the lawful intrusion.

■ Before addressing the State's argument, we must consider Bower's objection that the State is raising a new issue on appeal. According to Bower, because the prosecutor below did not argue that the police officers' entry into the hotel room could be considered an extension of the paramedics' entry, he has been prejudiced because he was not put on notice of the need to present evidence pertinent to this issue.

■ We find Bower's position to be untenable for a number of reasons. First, the overarching "issue" presented both to the trial court and on appeal was raised by Bower's motion, not by the State. That issue is whether the officers' entry into the motel room violated the Fourth Amendment. Second, the State was not obligated to notify Bower in advance of the hearing of each of the warrant exceptions the State deemed applicable nor to give him advance notice of all its legal arguments respecting those ex-

ceptions.[1] When a defendant has demonstrated that a warrantless search or seizure occurred, it becomes the State's burden to prove through *presentation of evidence* that an exception to the warrant requirement applied. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *State v. Brauch*, 133 Idaho 215, 218–19, 984 P.2d 703, 706–07 (1999); *State v. Ferreira*, 133 Idaho 474, 481, 988 P.2d 700, 707 (Ct.App.1999), *cert. denied*, 529 U.S. 1038, 120 S.Ct. 1533, 146 L.Ed.2d 348 (2000). It then becomes the judge's duty to determine whether the proven facts demonstrate that the search met the reasonableness standard of the Fourth Amendment. While prosecutors may customarily address some written or oral argument to the court presenting the State's legal theories as to why the search or seizure was lawful, the prosecutor is not obligated to do so; nor is the trial court precluded from ruling that the evidence was lawfully acquired on a theory different from that advanced by the prosecutor. We have held that a court's analysis of the constitutionality of a search is not circumscribed by the intent or belief of the officer at the scene regarding the reason or justification for the search. *State v. Murphy*, 129 Idaho 861, 863, 934 P.2d 34, 36 (Ct.App.1997); *State v. Shepherd*, 118 Idaho 121, 124, 795 P.2d 15, 18 (Ct.App.1990). *See also Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370, 377–78 (1985); *Scott v. United States*, 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 177–78 (1978). Similarly, the court is not limited by the prosecutor's argument or the absence thereof. "The lawfulness of a search is to be determined by the court, based upon an objective assessment of the circumstances which confronted the officer at the time of the search." *Shepherd*, 118 Idaho at 124, 795 P.2d at 18.

■ Finally, it must be remembered that the purpose of the exclusionary rule, which disallows the use of unconstitutionally obtained evidence at the trial of an accused, is to deter law enforcement officials from violating constitutional protections. *Stone v. Powell*, 428 U.S. 465, 492, 96 S.Ct. 3037, 3051, 49 L.Ed.2d 1067, 1086 (1976); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Use of the exclusionary rule imposes a price upon society in that it often enables the guilty to escape prosecution.[2] Therefore, the exclusionary rule should be employed only when there has *in fact been a violation of the defendant's constitutional rights*. The social cost ought not be imposed merely because the police officer or the prosecutor has failed to articulate the appropriate justification if the search or seizure was, in fact, lawful. Accordingly, we reject Bower's assertion that we should not consider the State's argument that the police entry into his motel room was a lawful extension of the paramedics' entry because an argument was not expressed in that precise form by the prosecutor at the suppression hearing.

■ We turn then to the merits of the State's contention that police officers could legally enter the motel room while the paramedics were still present in order to seize contraband that the paramedics had seen in plain view. Our first step is to determine whether the emergency personnel were still lawfully present when officers entered. Bower argues that they were not because his refusal to accept further treatment terminated the exigency. In support of this argument, he cites cases recognizing a constitutional right to refuse medical treatment, *Washington v. Glucksberg*, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), and *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990).

■ We do not find Bower's argument persuasive. The test to be applied in determining whether exigent circumstances exist

---

1. Moreover, in this case the only legal argument about the applicability of warrant exceptions occurred *after* the close of the evidence, which negates Bower's position that he somehow relied upon the prosecutor's argument in determining what evidence he needed to present.

2. In Justice Cardozo's famous words, "The criminal is to go free because the constable has blundered." *People v. DeFore*, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926).

is "whether the facts reveal 'a compelling need for official action and no time to secure a warrant.'" *State v. Wren*, 115 Idaho 618, 624, 768 P.2d 1351, 1357 (Ct.App.1989) (quoting *Michigan v. Tyler*, 436 U.S. at 509, 98 S.Ct. at 1949, 20 L.Ed.2d at 498). *See also Curl*, 125 Idaho at 227, 869 P.2d at 227; *Sailas, supra*. This is an objective test applied to the facts as known to the government agents. It is not based on a victim's subjective beliefs or desires, although these may be factors affecting the reasonableness of the government agent's actions. Emergency medical personnel addressing a potentially serious medical condition are not required to depart instantly upon a patient's declaration that he wishes no further medical treatment, particularly in circumstances where there is reason to question the patient's mental competence to make that choice. Here, Bower had just been found unconscious under circumstances suggesting that he was under the influence of drugs, which drew his immediate mental competence into doubt. The fact that he was declining treatment did not make unreasonable the paramedics' belief that he required further attention. Therefore, the exigent circumstance had not yet dissipated when police officers entered the motel room, while Bower was still on the floor with paramedics continuing to evaluate or treat him.

We turn then to the question whether the police officers' own intrusion without a warrant was permissible. Of those jurisdictions that have considered the question, a majority has held that law enforcement officers may enter premises to seize contraband that was found in plain view by firefighters or other emergency personnel, at least if the exigency is continuing and the emergency personnel are still lawfully present. *See, e.g., United States v. Brand*, 556 F.2d 1312 (5th Cir.1977);[3] *State v. Eady*, 249 Conn. 431, 733 A.2d 112 (1999), *cert. denied*, 528 U.S. 1030, 120 S.Ct. 551, 145 L.Ed.2d 428 (1999); *Commonwealth v. Person*, 385 Pa.Super. 197, 560 A.2d 761 (1989); *Jones v. Commonwealth*, 29

Va.App. 363, 512 S.E.2d 165 (1999); *State v. Bell*, 108 Wash.2d 193, 737 P.2d 254 (1987).

In *Bell*, firefighters discovered a marijuana-growing operation at a fire scene while searching an attic to determine if there were smoldering embers. A deputy sheriff was called to assist in the removal of the marijuana. The court held that "where firefighters have lawfully discovered evidence of criminal activity under the plain view doctrine, it is not necessary for sheriff's officers to obtain a warrant before entering a residence to seize the evidence." *Bell*, 737 P.2d at 259. *Eady* also involved a circumstance where a firefighter noticed drugs in plain view in a residence and conveyed that information to an officer who was directing traffic at the fire scene. The officer entered the house and seized the drugs. The court held the police officer's actions lawful, noting that the limited entry by the deputy "constituted no greater intrusion upon the defendant's privacy or possessory interest than did [the firefighter's] entry and observation." *Eady*, 733 A.2d at 120. Likewise in *Jones*, the court held, "After a fireman has observed evidence in plain view, he may summon a police officer, who may enter the residence and seize the evidence without first obtaining a warrant." *Jones*, 512 S.E.2d at 168. The court reasoned that "[a] warrant is not required in these circumstances because the defendant no longer has a reasonable expectation of privacy for that area of the apartment where one official validly on the premises has made the lawful discovery, and another is merely preserving the incriminating evidence." *Id.* at 169.

We are aware of two jurisdictions that have expressed a contrary view. The Ninth Circuit Court of Appeals in *United States v. Hoffman*, 607 F.2d 280 (9th Cir.1979), held that it was impermissible for a policeman to enter a residence to seize a shotgun that had been found by firefighters. The Ninth Circuit said:

---

3. The *Brand* court went a step further, holding that a later-arriving officer could enter a house to join emergency medical personnel even though the exigency had passed because the patient had been removed to an ambulance. Because we have held that Bower's medical emergency had not been resolved before officers entered his motel room, we need not and do not express either agreement or disagreement with this aspect of the *Brand* decision.

The fact that the police officer's actual physical intrusion was no greater than that of the firemen does not control our examination of appellant's Fourth Amendment claims. The physical invasion of a property interest is not the essence of a Fourth Amendment violation. Rather, "the Fourth Amendment protects people not places." Fire victims do not abandon all reasonable expectations of privacy.

*Id.* at 284 (quoting *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967)). The Montana Supreme Court followed the *Hoffman* rationale in *State v. Bassett,* 294 Mont. 327, 982 P.2d 410 (1999).

 Although we agree with the *Hoffman* court's view that "[f]ire victims do not abandon all reasonable expectations of privacy," we are not otherwise persuaded by its analysis. We agree with the majority rule that an officer may follow in the footsteps of firefighters or other emergency response personnel who, while lawfully present in response to an exigent circumstance, have discovered contraband or other evidence of criminal activity in plain view, and have thereupon requested police assistance. In such a circumstance, the defendant's privacy interest has already been compromised to the extent of the emergency personnel's intrusion. So long as the emergency personnel are still lawfully on the premises at the time of the police officer's arrival, and the officer's intrusion does not exceed that of the emergency personnel, either temporally or spatially, the defendant suffers no additional injury to his privacy interest by the officer's entry for purposes of seizing the already-discovered contraband. In the words of the Connecticut Supreme Court, "The suppression of such evidence would elevate form over substance and would undermine three decades of state and federal precedent that has sought to infuse logic and common sense into the exclusionary rule since its pronouncement by the United States Supreme Court in *Mapp v. Ohio* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)." *Eady,* 733 A.2d at 123.

 We emphasize that our holding is a narrow one. The United States Supreme Court has stated that innocent fire victims retain some expectation of privacy in their homes. *Tyler,* 436 U.S. at 505, 98 S.Ct. at 1947, 56 L.Ed.2d at 495. It follows that people who receive emergency medical treatment in their residences also retain privacy interests to the extent that those interests have not been necessarily infringed by government emergency response personnel. Citizens need not expect that the initial, lawful entry of one government officer justifies successive, unrelated or more expansive, warrantless entries by other officers. Hence, a call from a firefighter or paramedic reporting contraband discovered in the course of work would not justify a police officer in conducting a general search of the premises. *See Brand,* 556 F.2d at 1318 (holding that the medical emergency justified the officers' presence only in the living room and that the officers infringed upon the defendant's legitimate expectation of privacy when they expanded their intrusion into the bedroom).

Applying these standards in Bower's case, it is apparent that his Fourth Amendment privacy interest was not infringed by the officers' conduct. The police arrived while the emergency personnel were present and still about their work. There is no indication that the emergency personnel lingered at the scene waiting for the police to arrive. Rather, they were still attempting to treat Bower. The officers did not exceed the spatial or temporal boundaries of the paramedics' entry. We therefore conclude that the police were lawfully present and that the evidence was lawfully seized from Bower's motel room.

The decision of the district court denying Bower's suppression motion is affirmed.

SCHWARTZMAN, C.J., and PERRY, J., concur.