**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43092**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 10** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  February 16, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ANTHONY KYLE SMITH,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Gerald F. Schroeder, District Judge; Hon. Theresa Gardunia, Magistrate.

Decision of the district court, on intermediate appeal, affirming the magistrate's denial of motion to suppress, affirmed.

Alan Trimming, Ada County Public Defender; Lance L. Fuisting, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Anthony Kyle Smith appeals from the district court's decision, on intermediate appeal, affirming the magistrate's denial of Smith's motion to suppress all evidence and statements obtained by the State.  Smith argues the district court erred in affirming the magistrate's denial of Smith's motion because exigent circumstances did not exist to justify the warrantless entry of his shed, and he did not consent to the warrantless entry.  Smith maintains that even if he did consent, his consent was the result of duress and coercion.  For the reasons discussed below, we affirm the district court's decision.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2013, Boise City Police Officer McMikle responded to a report of a runaway located in a shed. Dispatch had indicated that Smith lived in the shed and was harboring a fifteen-year-old female runaway. Smith was under a no-contact order regarding the runaway. Officer McMikle visited Smith at the shed but Smith denied having any knowledge of the runaway. Smith allowed the officers to look in the shed but they did not find the runaway.

Later that day, dispatch reported that a juvenile probation officer provided information that the runaway was at Smith's shed and that she may be hidden in a hole beneath the shed. Without a warrant, Officer McMikle returned to the shed with Corporal Wudarcki and other officers. They heard a commotion inside the shed that sounded like foot movement and furniture being moved. Officer McMikle testified that they ordered Smith to open the door and told Smith they knew the runaway was inside. Both Officer McMikle and Corporal Wudarcki testified that they never asked if they could enter the shed. After a delay, Smith opened the shed and exited outside. Smith was with another young man, Carl. Corporal Wudarcki testified that he told Smith, "Look, we aren't going away. We know she's there. We just need to get this over and done with." Officer McMikle and Corporal Wudarcki both testified that Smith nodded knowingly that the runaway was inside the shed. The officers then checked Smith and Carl for weapons.

At some point, Corporal Wudarcki told Smith the officers could take an alternative route to gain access to the shed by arresting Smith and/or bringing in a dog. Corporal Wudarcki testified that he told Smith someone was going to get bit by the dog, but continued that he did not want to see anyone get hurt.

Officer Wudarcki informed Smith that he was harboring a runaway and asked whether Smith knew the female juvenile was a runaway. Smith answered, "Yeah," according to Officer Wudarki's testimony. The officers then entered the shed with Smith. Officer Wudarcki asked Smith how to access the hole. Following Smith's instructions, the officers removed the floorboards and accessed the hole to secure the runaway. The officers discovered what was ultimately determined to be marijuana during a search of Smith incident to his arrest.

The State charged Smith with violation of a no-contact order, harboring a runaway, and possession of marijuana. Smith filed a motion to suppress the evidence and statements obtained

by the State, arguing that the warrantless search of the shed, without voluntary consent, was illegal and that the marijuana was obtained as the fruit of Smith's illegal arrest and search. The magistrate denied Smith's motion to suppress, determining that exigent circumstances justified the warrantless search, Smith consented to the warrantless search, and the search incident to arrest was lawful. Smith entered a conditional guilty plea to the charges and reserved his right to appeal the magistrate's denial of his motion to suppress. Smith appealed, and the district court affirmed the magistrate. Smith appeals to this Court, requesting we reverse the district court's decision.

## II.

### ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, we do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).

### A. Exigent Circumstances

The United States and Idaho Constitutions prohibit unreasonable searches and seizures of persons or property.[1] U.S. CONST. amend. IV; IDAHO CONST. art. 1, § 17. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *State v.*

---

[1] Smith does not argue the Idaho Constitution affords greater protection, so this Court follows the Fourth Amendment analysis pursuant to the Fourth Amendment to the United States Constitution.

*Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Smith*, 152 Idaho 115, 118, 266 P.3d 1220, 1223 (Ct. App. 2011). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.*

Smith argues the district court erred in affirming the magistrate's denial of Smith's motion to suppress because exigent circumstances, one of the warrant requirement exceptions, did not exist to justify the warrantless entry into the shed. "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456 (1948)). A warrantless search under the exigent circumstance exception must be strictly circumscribed by the nature of the exigency that justifies the intrusion. *State v. Buterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct. App. 2002). The traditional exigencies that may justify a warrantless entry by law enforcement officers are pursuit of a fleeing felon, imminent risk of destruction of evidence, prevention of a suspect from escaping, or danger to the police or to other persons inside or outside the dwelling. *State v. Bunting*, 142 Idaho 908, 912, 136 P.3d 379, 383 (Ct. App. 2006). The need to protect or preserve life or avoid serious injury is also justification for what would be otherwise illegal absent an exigency or emergency. *State v. Holton*, 132 Idaho 501, 504, 975 P.2d 789, 792 (1998); *State v. Sailas*, 129 Idaho 432, 435, 925 P.2d 1131, 1134 (Ct. App. 1996). The exigent circumstance exception does not apply where there is time to secure a warrant. *State v. Robinson*, 144 Idaho 496, 501, 163 P.3d 1208, 1213 (Ct. App. 2007).

The test for application of this warrant exception is whether the facts as then known to the officers, and the reasonable inferences drawn therefrom, warrant a man of reasonable caution in the belief that the action taken was appropriate. *State v. Pearson-Anderson*, 136 Idaho 847, 850, 41 P.3d 275, 278 (Ct. App. 2001). This is an objective test, and it should be applied to the facts as known to the officers at the time of the warrantless entry. *Id.* While courts must scrutinize a claim of emergency to ensure that it is not a pretext for entries and searches that otherwise fall under the warrant requirement, courts should avoid second-guessing police decisions made in legitimate belief that life is at stake. *Id.* Here, the district court agreed with

4

the magistrate that exigent circumstances authorized the officers to enter the shed without a warrant to retrieve the female juvenile runaway from the hole underneath the shed.

Smith argues that exigent circumstances do not justify warrantless entry when the suspected crime is nonviolent. He relies on *State v. Curl*, 125 Idaho 224, 869 P.2d 224 (1993), and *State v. Salinas*, 134 Idaho 362, 2 P.3d 747 (Ct. App. 2000), to support these arguments. However, his reliance on these cases is misplaced. In *Curl*, the Court determined that "when the only concern is destruction of evidence, the offense must be sufficiently grave, *i.e.*, a violent offense, be it misdemeanor or felony." *Id.* at 227, 869 P.2d at 227. Here, however, destruction of evidence was not a concern. Rather, the officers were trying to locate a female juvenile runaway who was reported to be hidden underneath the floorboards of Smith's shed.

Importantly, before arriving to the shed, Officer McMikle knew that there was a no-contact order between the female juvenile runaway and Smith and that the underlying charge on the no-contact order was harboring a runaway. Once the officers arrived at the shed during the second visit, they heard foot movement and furniture being moved around from inside the shed. Corporal Wudarcki testified that he was concerned about the runaway's welfare. Moreover, upon contact with the officers during the second visit, Smith acknowledged that the runaway was in the shed. As the district court noted, citing case law, "No child who has run away from his parent's supervision and who has taken refuge with another juvenile in the latter's home can be considered 'safe'; that such action is fraught with danger is self-evident and requires no elaboration." *In re Moten*, 242 So. 2d 849, 856 (La. Ct. App. 1970). While the runaway here did not take refuge with another juvenile, she was hidden underneath an adult male's shed. Moreover, this adult male had a no-contact order with the female juvenile. Considering the totality of circumstances, it was objectively reasonable for the officers to be concerned for the safety of the female juvenile runaway hidden in a hole underneath the shed. The officers reasonably perceived the runaway to be in danger based on the facts they knew at the time of the entry. Because danger to others within or outside a dwelling constitutes an exigent circumstance, the officers did not need a warrant to enter the shed. Accordingly, the district court did not err in affirming the magistrate's decision that the exigent circumstance warrant requirement exception justified the officers' warrantless search of the shed.[2]

---

[2]    Having determined that the entry was justified by the exigency exception, we need not address whether the entry was justified by the consent exception.

**B.     Search Incident to Arrest**

Lastly, Smith contends the district court erred in affirming the magistrate's conclusion that the subsequent arrest of Smith and seizure of marijuana were lawful. Smith reasons that because the warrantless entry into the shed was unlawful, the arrest and search were also unlawful. A search incident to arrest permits police to search an arrestee only when there has been a lawful custodial arrest. *State v. LaMay*, 140 Idaho 835, 838, 103 P.3d 448, 451 (2004). However, because we hold that the district court did not err in affirming the magistrate's determination that the officers were justified in their warrantless entry, Smith's argument lacks merit. The officers' entry being lawful makes the subsequent arrest lawful, which in turn makes the search incident to arrest lawful. The district court did not err in affirming the magistrate's decision that the discovery of the marijuana was not the result of an illegal arrest or search.

### III.

### CONCLUSION

The district court did not err in affirming the magistrate's decision that exigent circumstances existed and that Smith gave voluntary implied consent for the officers to enter the shed. Moreover, because the entry was lawful, the arrest and subsequent search were also lawful. Accordingly, we affirm the district court's decision.

Judge GRATTON and Judge HUSKEY **CONCUR**.