130 P.3d 1162

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Reynaldo REYNA, Defendant–Appellant.**

No. 30953.

Court of Appeals of Idaho.

Dec. 2, 2005.

Review Denied March 22, 2006.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant. Diane M. Walker argued.

Hon. Lawrence G. Wasden, Attorney General; Krista L. Howard, Deputy Attorney General, Boise, for respondent. Krista L. Howard argued.

PERRY, Chief Judge.

Reynaldo Reyna appeals from his judgment of conviction for possession of methamphetamine, challenging the denial of his motion to suppress. For the reasons set forth below, we affirm.

## I.

### FACTS AND PROCEDURE

At approximately 2:00 a.m. an officer responding to an investigative call followed a pickup to a residence, pulling in behind the pickup in the driveway. The police contacted the driver, who was identified as Reynaldo Reyna. After briefly questioning Reyna, the investigating officer told Reyna that he was free to go. Reyna then walked to the resi-dence through a backyard gate, closing the gate behind him.

Shortly thereafter, the officer was informed by dispatch that Reyna had two outstanding warrants for his arrest, both for misdemeanors. One warrant allowed service only during the daytime, and the other allowed service in any public place, day or night. The investigating officer spoke to Reyna, who was then standing on a porch behind the gate. The officer informed Reyna that there were warrants for his arrest. Although the investigating officer could not remember exactly what he said to Reyna, he testified that Reyna returned to where the officer was standing and was taken into custody. The investigating officer also could not recall whether Reyna opened the gate or if another officer did. However, at no time did the officers enter the backyard. During a search incident to Reyna's arrest, police discovered a small plastic bag of methamphetamine.

Following testimony at a hearing on Reyna's subsequent motion to suppress, the district court held the arrest was lawful. The district court found that Reyna closed the gate when he went into the backyard, but that it was unclear who later opened the gate. However, the district court also found that, after the officers spoke with Reyna, he voluntarily came back outside the gate. The district court elaborated by stating:

Furthermore, I find that [Reyna] could have continued to walk into the house and he would have been free to stay in the house had he elected to do so. These were not felony warrants. They would not have been allowed to pursue him. Instead, he came back out. They didn't go onto the property. They didn't go beyond the closed gate.

I think this was an appropriate law enforcement activity. The law enforcement officers had legitimate business, so they were entitled to wait outside the gate. And if [Reyna] agreed to come back out then he could do that.... [O]nce he voluntarily came back out, then I find that he was properly arrested on the warrants, at least on one warrant.

And because there were two warrants—and one warrant was for day or night in a public place—I find that once he came back out into that open area, that he was properly arrested at least on one warrant.

The district court denied Reyna's motion to suppress.[1] Reyna pled guilty to possession of methamphetamine, I.C. § 37–2732(c), reserving the right to appeal the denial of his suppression motion. Reyna now appeals.

## II.

### ANALYSIS

▮ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

▮ The issuance of an arrest warrant constitutes a judicial finding that probable cause exists to suspect a crime has been committed and that the individual named on the warrant has committed it. I.C.R. 4(a); *see also State v. Elison,* 135 Idaho 546, 549, 21 P.3d 483, 486 (2001). Idaho Code Section 19–611 provides that the police may use force to enter a home to execute a properly issued arrest warrant if denied admittance after demanding admittance and explaining their purpose. However, the issuing judge may curtail this broad statutory authority by limiting the conditions under which the warrant may be executed. *State v. Hall,* 132 Idaho 751, 753, 979 P.2d 624, 626 (1999); *State v. Shellenbarger,* 140 Idaho 185, 187, 90 P.3d 935, 937 (Ct.App.2004). Arrest warrant limitations are utilized by the courts when the

issuing judge believes the suspected crime the warrant is based upon is not serious enough to justify the execution of the warrant under all circumstances. *Hall,* 132 Idaho at 753, 979 P.2d at 626. Limiting execution of the warrant to a public place is one limitation an issuing judge may impose. *Shellenbarger,* 140 Idaho at 187, 90 P.3d at 937. Execution of an arrest warrant with disregard for the public place only limitation imposed by the court is the same as a warrantless arrest. *Id.*

Here, the warrant Reyna was arrested pursuant to was limited to being executed in a public place, day or night. Reyna argues that the district court erred in determining who had the burden to demonstrate that the police complied with the limitations of the arrest warrant. Reyna contends that the burden of proof was on the state to show the police complied with the warrant limitations. Reyna further asserts that, without a finding of who opened the gate, the district court erred in holding that the police did not enter his property. Reyna now urges this Court to find the factual ambiguity of who opened the gate should have been properly resolved against the state and that this Court must remand for further proceedings or vacate the district court's order. However, we conclude it is unnecessary to consider these issues. The district court found Reyna voluntarily came out into an open area where he was then arrested pursuant to the warrant. The only issue this Court need consider is whether Reyna moved into a "public place" before he was arrested. If so, his arrest was in compliance with the warrant limitations.

The United States Supreme Court established that, when an individual is standing in the doorway of his or her home, open to public view, speech and hearing, the individual is in a public place with no expectation of privacy and is not subject to Fourth Amendment protection. *See United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300, 305 (1976). In *Shellenbarger,* this Court applied the rule in *Santana* to arrests made pursuant to a warrant limited

---

1. The district court found the warrant allowing service in any public place day or night was properly served in this case rather then the other

"daytime only" warrant as it was approximately 2:17 a.m. when the arrest took place.

to execution in a public place. *Shellenbarger,* 140 Idaho at 187–88, 90 P.3d at 937–38. In *Shellenbarger,* the defendant had warrants for his arrest that were limited to execution in a public place. The police knocked on the door of the defendant's motel room informing him they were the police. The defendant voluntarily opened the door and stood at the entranceway where he was then arrested. This Court held the warrant limitations were not violated when the defendant was arrested in the open doorway of his motel room, which he had voluntarily come to, knowing the police were outside the room. As in *Santana,* the open doorway was determined to be a public place for the purposes of the warrant limitation. *Shellenbarger,* 140 Idaho at 188–89, 90 P.3d at 938–39.

Furthermore, there is an implied invitation for the general public to use and enter access routes to a house such as pathways, driveways, parking lots, and similar areas. *State v. Prewitt,* 136 Idaho 547, 551, 38 P.3d 126, 130 (Ct.App.2001). So long as the police remain in a place where a reasonable citizen would be (*e.g.* the driveway), their intrusion is legal, even if the police are standing in the home curtilage without a warrant. *See id.* We conclude that, for the purpose of an arrest warrant with limitations, such an access-way would also be a "public place."

In the instant case, the record indicates the police were standing either in or near the driveway of Reyna's home when they called to him. Thus, the police had a legal right to be there. When the police called to Reyna, as the district court found, he could have simply entered his house. Had Reyna done so, the limitations on his arrest warrants would have prevented the police from forcibly entering his home to arrest him. Instead, the district court found that Reyna voluntarily walked back to the officers and outside the gateway.

The record indicates that the area just outside the gateway was visible, at the very least, from the driveway, making it also open to public view, speech and hearing. As a result of it being open to public view, the area just outside the gate is a public place where Reyna had no expectation of privacy. In *Shellenbarger,* we determined the entryway of a dwelling was a public place for the purpose of an arrest warrant with a public place only limitation because the entryway was open to the public. *Shellenbarger,* 140 Idaho at 188–89, 90 P.3d at 938–39. Similarly, here, we now determine the area just outside the gateway was also a public place for the purposes of Reyna's arrest warrant with the same limitation. As in *Shellenbarger,* Reyna also voluntarily moved to a public place knowing the police were waiting for him. Therefore, we conclude that, because Reyna voluntarily stepped beyond the gateway, he had no reasonable expectation of privacy and was in a public place.[2] Accordingly, the police were acting within the limitation of the warrant when they arrested Reyna after he moved into a public place.

### III.

### CONCLUSION

Reyna was in a public place when the police arrested him and, thus, they acted within the limitations of the warrant. As a result, we do consider the other issues Reyna raises on appeal to this Court. The district court did not err in denying Reyna's motion to suppress. Accordingly, Reyna's judgment of conviction is affirmed.

Judge LANSING and Judge Pro Tem SCHWARTZMAN, concur.

---

**2.** Under the circumstances delineated here, we also conclude that who physically opened the gate upon Reyna's voluntary return is not determinative to the outcome reached. Once Reyna was open to public view, speech and hearing, he was in no different situation than any "doorway" arrest. *See Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300.