# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41981

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 32 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: May 29, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| HEATHER LYNN HEARD, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Jonathan P. Brody, District Judge.

Judgment of conviction and order of the district court denying suppression motion, affirmed.

Sara B. Thomas, State Appellate Public Defender; Kimberly E. Smith, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

LANSING, Judge

Heather Lynn Heard was found unconscious in her hotel room after a domestic disturbance. Officers entered the room, purportedly to ensure her safety. After doing so, officers found illegal drugs and syringes. Accordingly, Heard was charged with possession of a controlled substance and possession of paraphernalia. Heard sought suppression of the drug evidence on the ground that the officers violated the Fourth Amendment by entering her hotel room without a warrant. The district court denied her motion and Heard appeals.

## I.

## BACKGROUND

Brandon Byars worked as a security guard for a Burley hotel. He was notified that a couple was loudly arguing in an adjacent parking lot and went to speak with them. He came

1

upon Heard and her fiancé, Steven Harris.  When asked to stop arguing, they did, and left the area.  Later that evening, Byars heard additional reports of arguing and loud fighting at an adjacent store.  When Byars himself heard additional arguing at the hotel, he called law enforcement and reported that Heard and Harris were engaged in a domestic disturbance.

After dispatch relayed Byars' report, Staff Sergeant Thompson of the Cassia County Sheriff's Office arrived on scene.  He met Byars at the hotel and both proceeded to Heard's room.  From outside, Byars and Thompson could see into the room through an uncovered window and a partially open door.  From the doorway Thompson saw Harris, who was awake and alert, and Heard, who was lying motionless on a bed.  Heard did not move when Thompson began speaking with Harris.  Thompson explained to Harris that a domestic dispute had been reported.  As the two spoke, the officer became concerned because Heard was not waking up.  In his experience, people infrequently ignored the presence of police.  Accordingly, Thompson asked Harris to waken Heard.  She moved only slightly and mumbled.  According to Thompson's subsequent testimony, Heard seemed "extremely groggy," causing him to worry she was injured or intoxicated.  At that point, the officer entered the room because he believed "people's safety" was at stake.

After entering, Thompson spoke to Heard, who slowly began to respond.  At the officer's direction, she got out of bed.  When she did so, a small plastic bag fell onto the bed.  At that point, the officer and Heard both left the room and spoke outside.  Heard had visible marks on her face and arm, indicating possible domestic violence.  The officer also observed needle marks on her arms.  She eventually admitted to having used drugs two weeks earlier. Thereafter, the officer seized the small plastic bag, which was found to contain methamphetamine.

Heard was arrested and charged with possession of a controlled substance, Idaho Code § 37-2732(c)(1), and possession of paraphernalia, I.C. § 37-2734A.  She filed a motion to suppress the drug evidence, arguing that the drugs were found as a result of an unconstitutional search because Thompson entered her hotel room without a warrant.  After an evidentiary hearing, the district court denied the motion, holding that Thompson's entrance fell within the exigent circumstances exception to the warrant requirement.  In the trial court's view, the officer had legitimate reason to fear that Heard was injured because he arrived shortly after a domestic dispute and found one person unresponsive.  This exigency, the court held, justified Thompson's warrantless entry to ensure Heard's safety.

2

Heard entered a conditional guilty plea to the possession of a controlled substance charge in exchange for the dismissal of the other charge, and reserved her right to appeal the denial of her suppression motion.

## II.

## ANALYSIS

When a decision on a motion to suppress evidence is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014); *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Physical entry into an occupant's hotel room amounts to a search governed by the Fourth Amendment to the United States Constitution. *See Hoffa v. United States*, 385 U.S. 293, 301 (1966) ("A hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office."); *State v. Robinson*, 144 Idaho 496, 499, 163 P.3d 1208, 1211 (Ct. App. 2007) ("the Fourth Amendment has drawn a firm line at the entrance to the house. Absent [an exception to the warrant requirement], that threshold may not reasonably be crossed without a warrant.") (quoting *Payton v. New York*, 445 U.S. 573, 589-90 (1980)). Therefore, officers are generally required to obtain a warrant before entering a house or hotel room. *Payton*, 445 U.S. at 589-90; *Robinson*, 144 Idaho at 499, 163 P.3d at 1211. A warrantless entry is permissible, however, if it was a reasonable response to an exigent circumstance. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). Exigencies include danger to the police or to other persons inside the dwelling. *Robinson*, 144 Idaho at 499, 163 P.3d at 1211. Thus, "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City*, 547 U.S. at 403. For this reason, law enforcement officers may enter a home or other private premises without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *Id.*; *Mincey*, 437 U.S. at 392.

3

In prior cases, we have recognized that unconsciousness or unresponsiveness, along with factors tending to indicate distress, may amount to exigent circumstances. In *State v. Bower*, 135 Idaho 554, 557-59, 21 P.3d 491, 494-96 (Ct. App. 2001), a young child was left without care and her father was found unconscious in a hotel room shower. We had little difficultly concluding that those facts represented exigent circumstances. Likewise, we found exigency in *State v. Barrett*, 138 Idaho 290, 292, 62 P.3d 214, 216 (Ct. App. 2003) where a person was first observed on his next-door neighbor's porch, unable to stand or to open the door, and later found incoherent and curled up in a fetal position. There, we held that entrance into the person's home was permitted to ascertain the cause of his condition and to ensure that no other residents of the home had been exposed to any hazards. *Id*. at 294, 62 P.3d at 218.

Here, the officer described two safety concerns that prompted his entry. The first was that Heard might need immediate medical care. As the officer explained, "She's unresponsive, I have no idea whether she's unconscious, or if she's been drugged or she's intoxicated, [or if she has a] head injury." His second concern was that Harris might hurt or intimidate Heard. The district court found that the first concern was reasonable and that Heard's condition, as observed at the time the officer entered the room, amounted to exigent circumstances.

We agree with the district court. The officer saw Heard initially unconscious and thereafter minimally responsive. In the officer's view, which was credited by the district court, Heard's behavior was not consistent with normal behavior of a person being awakened from sleep. Instead, he testified that her response was "odd," causing concern and "a pretty clear sign there might be something wrong."

We also note that the officer knew that the timing and circumstances of Heard's unconsciousness were suspicious. Generally, surrounding circumstances can be indicative of whether a person is asleep or been rendered unconscious in some other manner. Here, the testimony indicates that approximately five minutes had elapsed from the time that Byars heard arguing until the police arrived on scene. People ordinarily would not be expected to fall deeply asleep mere minutes after being engaged in a loud argument. Also, Harris had told the officer that Heard had not taken medication that she usually took, a factor that could suggest the possibility of medical complications. Here, the evidence showed that the officer found Heard unconscious under strange circumstances that justified his concern that she might be in serious

4

danger and justified his entry to ensure her safety. Therefore, the district court correctly held that the exigent circumstances exception to the warrant requirement applied.[1]

Officer Thompson entered Heard's hotel room after finding her unconscious under suspicious circumstances. Although his entrance was not authorized by a warrant, we conclude that it was authorized under the exigent circumstances exception to the warrant requirement. Therefore, the district court's order denying Heard's suppression motion and the judgment of conviction are affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR.**

---

[1] Contrary to Heard's argument, this is not a holding that every report of domestic violence creates exigent circumstances. Had Heard been awake and alert, there would be no basis for finding exigent circumstances in this case.